# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| **GARVIE SETZER,** § | | |
| Plaintiff, § | | |
| § | | |
| vs. § | | **CIVIL ACTION NO. 4:19-cv-275** |
| § | | |
| **ACS MANUFACTURING, INC.,** § | | |
| Defendant. § | | |

## COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW**, Garvie Setzer, Plaintiff, and files this original complaint against ACS Manufacturing, Inc., Defendant, and would respectfully show the Court as follows:

### I. PARTIES

1. Plaintiff is an individual residing in Grayson County, Texas.

2. Defendant ACS Manufacturing, Inc. is a domestic for-profit corporation doing business in Texas and may be served by serving its registered agent Dan V. Knox, 1601 Commerce Blvd., Denison, Texas 75020.

### II. JURISDICTION

3. Jurisdiction is founded on federal question, specifically, 42 U.S.C.A. § 2000e, *et seq*. (Unlawful Employment Practices), as amended.

4. All prerequisites to filing suit have been met.

### III. FACTS

5. Plaintiff was employed for approximately three (3) months by Defendant. At the time of his separation on or about September 15, 2017, he was employed as a Mech Tech/JSA.

6.Upon information and belief, Defendant had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, the requisite number of employees to constitute an "employer" under 42 U.S.C.A. § 2000e, *et seq*. (Unlawful Employment Practices), as amended.

7.Plaintiff was subjected to vile, abusive and uncivilized sexual harassment by his supervisor, Jeff White.  Plaintiff reported the offensive behavior to Rob Cockrell, travel office supervisor, Kay Black, human resources representative, and Andrea Mory, human resources director.

8.Defendant allowed this conduct to permeate the workplace.

9.Jeff White asked Plaintiff if he had ever "s***ed a d**k."  He then asked "how do you know that you're not gay if you've never tried it" and that if Plaintiff ever wanted to try it, White had one he could s**k. White asked Plaintiff if he had ever been "f***ed in the a**."  White said if Plaintiff wanted to find out then to come to White's room or he would come to Plaintiff's room and he would show him how it felt.

10.White asked Plaintiff what he would do if White or a random man on the street offered him a briefcase with a million bucks in it, if he would "suck his d**k then."

11.Plaintiff repeatedly told White he was not gay and that White could keep his vulgar talk to himself.

12.On another day, when they arrived at the jobsite in Sparks, Nevada, White got out of the company truck, urinated, and told Plaintiff that he had "it" out if Plaintiff wanted to "drink straight from the tap."

13.Many days, after dropping the crew off at the jobsite, White left for an extended period of time. One day he came back with large pine cones in the truck.  Plaintiff asked White where he got

the pine cones and White said he slept with them in his ass all night long.  Plaintiff told White again that he did not want to hear White's vulgar talk, and that he came here to work not listen to this talk.

14. One day at lunch time, Plaintiff said he was starving and White told him if he came up to the trailer White would feed Plaintiff 10 inches with the juice coming out it.

15. One morning they got in the truck and White started telling the crew about a dream that he was in the ocean and a school of dolphins were probing him anally and he enjoyed it.

16. The next morning White asked them if they had seen the six-foot n***er running down the hall with a strap-on dick, and if they did, to send him to White's room.

17. This harassment happened on a daily basis and got worse when White drank alcohol.  His alcohol use was everyday as he drank crown and coke one after the other until Plaintiff did not feel safe with White driving the few blocks from the restaurant to the hotel.

18. One night, White drank twelve beers before going to the restaurant and drinking 5 or 6 crown and cokes.  Another crew member, David Stevens, said he knew that White was too drunk to drive but did not want to question White about letting someone else drive because he knew it would cause more harassment.  Stevens said if White drove crazy, he (Stevens) would grab the wheel and force him to pull over.

19. One day, White gave the crew corn dogs for lunch and told them after they ate them that they would not have done so if they knew what he had been doing with the corn dogs.

20. On many occasions White dropped the crew off at the job site and left.  He would be gone for a while and smell of alcohol when he returned.  On those days, he would not eat breakfast and not eat lunch.  The general consensus among the crew members was that he was eating a "sit down" breakfast or across the street watching the girls dance at the strip bar.

21.     Before Plaintiff left the plant in Denison to go to Nevada, he was told to call Rob Cockrell, travel office supervisor, if he had any problems.  Plaintiff called Cockrell to find out about the crew's return home.  Cockrell asked how things were going in Sparks, Nevada and Plaintiff told him good, thanks to Stevens's guidance, since White would not tell Plaintiff how to do anything, instead saying "figure it out."

22.     Plaintiff also told Cockrell that he was tired of eating at gas stations and having corn dogs every day.

23.     That same day when the crew left the plant for lunch, White got a telephone call and then asked who called Defendant.  Plaintiff told White that he had called Cockrell.  That day the crew finally ate somewhere decent.

24.     Later that day Plaintiff spoke to Glen Lashley, travel supervisor, and Cockrell.  They said they would transfer Plaintiff to a job site in Mesa, Arizona though it would take a few days to get someone else OHA trained to replace Plaintiff in Nevada.

25.     The next morning White complained to Plaintiff about him calling Cockrell.  Later he told Plaintiff "you thought that you were going to Mesa, but you're going to Texas and you won't have a job when you get there."  Plaintiff told White he did not care as long as it was away from him.

26.     Other employees and Plaintiff reported Jeff White to Andrea Mory, the human resources director.

27.     Nothing was done except Jeff White was told who was complaining about his conduct.

28.     Plaintiff resigned on or about September 15, 2017 because Plaintiff could not tolerate the regular vile, harassing, and dangerous on the job conduct of his supervisor, Jeff White, which Defendant refused to rectify.    Plaintiff was constructively discharged.

29. Defendant's conduct is intolerable in a civilized society and no person should be expected to tolerate it in the workplace.

30. Plaintiff could not understand why a company would continue to employ Jeff White, a chronic alcoholic who drives its company vehicles while intoxicated and harasses subordinates in this vile manner.

31. Plaintiff was earning approximately $13.00 per hour plus benefits.  In 2017, he earned $12,381.20 for three months' work.

## IV. FEDERAL CLAIMS FOR RELIEF AND DAMAGES

### COUNT I

**Violations of  42 U.S.C.A. § 2000e, *et seq.* (Unlawful Employment Practices), as amended**

32. A. Plaintiff alleges that he was discriminated against in violation of 42 U.S.C.A. §2000e, *et seq*. (Unlawful Employment Practices), as amended, protecting Plaintiff (male) from gender discrimination in the workplace.

33. B. Plaintiff claims all relief, legal and equitable, that effectuate his rights under 42 U.S.C.A.  § 2000e, *et seq*. (Unlawful Employment Practices), as amended.

34. C. Plaintiff requests reasonable attorney's fees as permitted under 42 U.S.C.A.  § 2000e, e*t seq*. (Unlawful Employment Practices), as amended.

35. D. On or about March 8, 2017, Plaintiff filed a written complaint with the U.S. Equal Employment Opportunity Commission. On February 22, 2019, he received the Notice of Right to Sue from the U.W. Equal Employment Opportunity Commission, which was dated February 20, 2019.

36. In addition to Count I, or in the alternative, Plaintiff alleges as follows:

## COUNT II

**Violations of  42 U.S.C.A. § 2000e,** *et seq.* **(Unlawful Employment Practices), as amended**

37. A. Plaintiff alleges that he was discriminated against in violation of 42 U.S.C.A. §2000e, *et seq*. (Unlawful Employment Practices), as amended, protecting Plaintiff (male) from sexual harassment and a hostile work environment in the workplace.

38. B. Plaintiff claims all relief, legal and equitable, that effectuate his rights under 42 U.S.C.A.  § 2000e, *et seq*. (Unlawful Employment Practices), as amended.

39. C. Plaintiff requests reasonable attorney's fees as permitted under 42 U.S.C.A.  § 2000e, e*t seq*. (Unlawful Employment Practices), as amended.

40. D. On or about March 8, 2017, Plaintiff filed a written complaint with the U.S. Equal Employment Opportunity Commission. On February 22, 2019, he received the Notice of Right to Sue from the U.W. Equal Employment Opportunity Commission, which was dated February 20, 2019.

41. In addition to Counts I and II, or in the alternative, Plaintiff alleges as follows:

## COUNT III

**Violations of  42 U.S.C.A. § 2000e,** *et seq.* **(Unlawful Employment Practices), as amended**

42. A. Plaintiff alleges that he was discriminated against in violation of 42 U.S.C.A. §2000e, *et seq*. (Unlawful Employment Practices), as amended, protecting Plaintiff (male) from retaliation for reporting discrimination, sexual harassment and a hostile work environment in the workplace.

43. B. Plaintiff claims all relief, legal and equitable, that effectuate his rights under 42 U.S.C.A.  § 2000e, *et seq*. (Unlawful Employment Practices), as amended.

44.   C.   Plaintiff requests reasonable attorney's fees as permitted under 42 U.S.C.A. § 2000e, e*t seq*. (Unlawful Employment Practices), as amended.

45.   D.   On or about March 8, 2017, Plaintiff filed a written complaint with the U.S. Equal Employment Opportunity Commission. On February 22, 2019, he received the Notice of Right to Sue from the U.W. Equal Employment Opportunity Commission, which was dated February 20, 2019.

## V.  DAMAGES

46.   Plaintiff would show that he has sustained damages within the jurisdictional limits of the Court as a proximate cause of Defendant's wrongful conduct.  Plaintiff claims all relief at law and in equity pursuant to 42 U.S.C.A.  § 2000e, *et seq*. (Unlawful Employment Practices), as amended.

## VI. ATTORNEY'S FEES

47.   Plaintiff would show that, as a result of Defendant's wrongful conduct as set forth herein, he is entitled to reasonable and necessary attorney's fees.

## VII. JURY DEMAND

48.   Plaintiff requests that this matter be tried before a jury.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff requests that upon final hearing hereof, Plaintiff have judgment against Defendant for actual damages in an amount within the jurisdictional limits of the Court together with interest on said amount at the highest rate allowed by law; reinstatement, liquidated damages; mental anguish; punitive damages; reasonable attorney's fees; costs of court; prejudgment and postjudgment interest; and any and all further relief, at law or in equity, general or special, to which Plaintiff may show himself justly entitled.

Respectfully submitted,

**RONALD R. HUFF**
Attorney and Counselor at Law
112 South Crockett Street
Sherman, Texas 75090
(903) 893-1616 (telephone)
(903) 813-3265 (facsimile)
ronhuff@gcecisp.com


 /s/ Ronald R. Huff
Ronald R. Huff (SBN 10185050)

**ATTORNEY FOR PLAINTIFF**